James E. Goodley
Jennings Sigmond, P.C.
1835 Market Street, Suite 2800
Philadelphia, PA 19103
(215) 351-0613
*Additional Counsel Listed on Signature page*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRANDON CARUSILLO, *on behalf of himself and others similarly situated,* | **COMPLAINT – COLLECTIVE ACTION** |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| FANSIDED, INC..d/b/a FANSIDED, | FILED ELECTRONICALLY ON JUNE 22, 2020 |
| Defendant. | |

Plaintiff Brandon Carusillo ("Carusillo" or "Plaintiff"), through his undersigned counsel, individually and on behalf of all persons similarly situated, files this Collective Action Complaint against FanSided, Inc., d/b/a FanSided ("FanSided" or "Defendant"), seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA").

## JURISDICTION AND VENUE

1.  Jurisdiction over Plaintiff's FLSA claims is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2.  Venue in this Court is proper pursuant to 28 U.S.C. § 1391.  Defendant is headquartered in this District.  The events giving rise to Plaintiff's claims occurred within this District and Defendant conducts business in this District.

## PARTIES

3.  Plaintiff Carusillo is an individual currently residing in Wyckoff, New Jersey.  He

was employed by Defendant as a Site Expert from on or about January 2018 through approximately mid-July 2018, and, pursuant to 29 U.S.C. § 216(b), has consented in writing to being a Plaintiff in this action. Ex. 1.

4.     Defendant FanSided is a Delaware corporation headquartered in New York, New York, and operating nationwide. FanSided maintains hundreds of sports and other special interest websites affiliated with its parent company Minute Media.

5.     Defendant employs individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-207.

6.     Defendant's annual gross volume of business exceeds $500,000.

## CLASS DEFINITION

7.     Plaintiff brings Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b) as a collective action on behalf of himself and the following class of potential opt-in litigants:

> All current or former Site Experts and similar employees who performed work in the United States for FanSided, Inc. within the past three years and who were classified as independent contractors (the "FLSA Class" or "Site Experts").

8.     Plaintiff reserves the right to redefine the FLSA Class prior to notice or class certification, and thereafter, as necessary.

## FACTS

9.     Defendant FanSided, is a media corporation affiliated with Minute Media, which operates and maintains hundreds of sports media websites for professional and college sports teams, as well as other special interest sports websites.

10.     On September 5, 2018, the sports website Deadspin published an article revealing FanSided's treatment of its Site Experts and other content creator employees, which included

negative feedback from many such employees concerning FanSided's pay practices.[1]

11.    On or about January 15, 2018, Plaintiff Carusillo signed an "Expert Services Agreement," attached hereto as Exhibit 2 ("Expert Agreement"), which to the extent lawful, governed the terms of the employment relationship between Carusillo and FanSided.

12.    From approximately January 2018 through approximately mid-July 2018, Carusillo served as a Site Expert for FanSided's "BoSox Injection" website, which was FanSided's team site for the Boston Red Sox, a Major League Baseball ("MLB") team.

13.    Carusillo's Expert Agreement obligated him to create content to place on FanSided's website.[2] Ex. 2, Expert Agreement at A-1.

14.    Although Carusillo's Expert Agreement called for publishing content on "Marlin Maniac" (FanSided's Miami Marlin's site), on or about January 15, 2018, FanSided and Carusillo modified the Expert Agreement such that Carusillo would perform work under the same terms, except with respect to BoSox Injection, rather than Marlin Maniac.

15.    During all times relevant to this action, Chris Headrick served as FanSided's "Editorial Director" for all of its MLB and NHL (National Hockey League) team sites, including BoSox Injection.[3] Headrick's role was to hire and supervise all MLB Site Experts at FanSided, including Plaintiff Carusillo.

16.    During Carusillo's employment at FanSided, among other duties, Carusillo regularly watched Boston Red Sox games, wrote and published in excess of 20 sports articles per week (more during peak times), managed other unpaid writers (which included relaying FanSided

---

[1] See "FanSided, Sports Illustrated's Slimy Appendage, Reeks of Exploitation," *available at*: https://deadspin.com/fansided-sports-illustrateds-slimy-appendage-reeks-of-1828725739 (last accessed May 12, 2020).

[2] https://www.bosoxinjection.com/ (last accessed 6/5/2020)

[3] https://fansided.com/author/bravespop/ (last accessed 5/12/2020)

directives from Headrick), edited and approved new writers' articles, monitored search engine optimization data, and managed comment sections on the BoSox Injection website.

17.     Carusillo also managed BoSox Injection's Twitter social media account. Carusillo would share links to BoSox Injection articles, as well as other team information. Carusillo "live Tweeted" during games in order to give readers play-by-play information about the team's performance.

18.     While Site Expert, Carusillo regularly worked approximately thirty (30) to thirty-five (35) hours per week during the baseball season, and approximately twenty five (25) hours per week during the offseason.

## EMPLOYMENT RELATIONSHIP

19.     The Second Circuit weighs several non-exclusive factors in order to determine whether, as a matter of "economic reality," an employment relationship exists. *See, e.g., Brock v. Superior Care, Inc.*, 840 F.2d 1054 (2d Cir.1988):

> 1) the degree of control exercised by the employer over the workers;
> 2) the workers' opportunity for profit or loss and their investment in the business;
> 3) the degree of skill and independent initiative required to perform the work;
> 4) the permanence or duration of the working relationship;
> 5) the extent to which the work is an integral part of the employer's business.

### *FanSided Hired and Exercised Control Over Site Experts*

20.     FanSided, per Editorial Director Chris Headrick, interviewed Carusillo for employment as Site Expert of BoSox Injection. On behalf of FanSided, Mr. Headrick hired Carusillo as Site Expert.

21.     FanSided advertised open positions for its Site Experts, often in the same or similar manner as FanSided advertisements for paid positions that FanSided classified as employee

positions. *See* Ex. 3, Job Ad, 9/5/2018.

22.     FanSided maintained control over the manner in which Site Experts performed their services.

23.     FanSided required Carusillo, whether personally or through Carusillo's supervision of BoSox Injection staff writers, to cover each of the Boston Red Sox games, respectively, and "maintain[] a vibrant engaged welcoming online community by (i) providing and/or curating submissions to one or more FanSites from enthusiasts on the subject of Expert's expertise (i.e. the "Subject") that contains fresh and knowledgeable content of interest to enthusiasts, and (ii) developing and/or and maintaining one or more social media accounts related to the Subject." Ex. 2, pp. 5 at ¶ 1.

24.     Site Experts regularly watched games and wrote recaps, previews, social media posts and other content concerning their respective teams.

25.     FanSided retained the right to edit the work product produced by Site Experts and on occasion, actually exercised such control.

26.     Site Experts were "expressly prohibited from entering into any revenue sharing arrangement related to a FanSite." *Id.* at pp. 2, ¶ 5. For purposes of enhancing FanSided's web search rankings, and therefore its advertising revenue, Site Experts were required to add certain search terms to their articles, title articles in a certain way, and write at least 150 words in each article.

27.     For the purpose of maximizing FanSided's ad revenue, and despite the fact that Site Experts never shared in such revenue, FanSided regularly encouraged and pressured its Site Experts to meet and exceed content posting goals and requirements.

*FanSided Determined Site Experts' Rate and Method of Payment;*
*Site Experts Had Minimal Opportunity for Profit or Loss and*
*Did Not Materially Invest in FanSided's Business*

28.     In their employment with FanSided, Site Experts possessed no significant opportunity for profit or for loss.  Although under the Expert Agreements, Site Experts were ostensibly paid on a per-page-view basis, Expert Agr. at pp. 5, ¶ 4, Site Experts were "expressly prohibited from entering into any revenue sharing arrangement related to a FanSite." *Id.* at pp. 2, ¶ 5.  Doing so would constitute "cause" for a Site Expert's termination of employment.  *Id.*

29.     Furthermore, <u>compensation maxes out at a mere $2,500 per month</u>, which is a small fraction of FanSided's overall ad income associated with any given team site.  Expert Agr. at pp. 5, ¶ 4.

30.     Furthermore, all work product created by a Site Expert "shall be the sole and exclusive property of" FanSided. Expert Agr. at pp. 2, ¶ 6.  The Expert Agreements go even further:

...

> If Expert has any rights that are not owned by Company upon creation or embodiment as contemplated herein, <u>Expert hereby irrevocably transfers and assigns to Company, all rights of every kind</u>, including copyright and otherwise, in the work in all languages throughout the world in perpetuity for use in all media whether now or hereafter known or invented. Expert agrees promptly to execute all documents and do all acts as may, in the opinion of Company, be necessary to give effect to this Section 6. Except as set forth herein, <u>Expert retains no rights to use the work product and agrees not to challenge the validity of Company's ownership of the work product. Expert also grants to Company and its licensees the right to use his/her name and/or likeness</u> on web sites where the Services appears (and the name of each other individual who creates Services under this Agreement) and for promotion of the Services and / or the FanSided brand in any and all media.

*Id.* (Emphasis added).

31.     It was common knowledge at FanSided that Site Experts were not allowed to enter into advertisement agreements, much less receive any revenue from advertisements on the team sites.

32.     Plaintiffs were not required to invest in equipment or materials with respect to their employment at FanSided.  Site Experts merely used their existing home computers and smart phones to perform services for FanSided.

### Site Experts' Services Required No Special Skill or Independent Initiative

33.     Site Experts' services required no special skill.  For example, no specific academic qualifications were required to be a Site Expert, much less a college degree.  Similarly, no specific professional experience was required.

### Site Experts' Employment With FanSided Was in the Nature of a Permanent Relationship

34.     Site Experts' employment with FanSided was in the nature of a permanent relationship.  Site Experts signed and labored under the terms of Expert Agreements and regularly worked more than 40 hours a week for FanSided.

### Site Experts' Services Were An Integral Part of FanSided's Business

35.     FanSided (and its parent corporations) is a media company and FanSided is in the business of sports media.  FanSided's very business could not exist without the content created by its writers, including Site Experts.  Indeed, the content created by its writers constitutes the entirety of the product offered by FanSided.  Without the existence of the content published on Site Experts' team sites, advertisers would not pay FanSided to advertise on these team sites.

36.     As a matter of economic reality, Plaintiff and Site Experts were dependent on FanSided for income, and therefore were employees of FanSided.  Given the number of hours Site Experts worked for FanSided, the possibility and extent of outside employment was heavily curtailed.

## WILLFULNESS

37.     In September 2017, Plaintiff's law firm, Jennings Sigmond, P.C., filed an FLSA

Collective Action with facts very similar to the instant case, *Bradley v. Vox Media, Inc.* (D.D.C. No. 17-1791) (the "*Bradley* Action"). The *Bradley* plaintiffs alleged that the Defendant Vox Media had misclassified its Site Managers (who managed sports websites for Vox Media's sports division "SB Nation") as independent contractors, in violation of the FLSA. The *Bradley* Action was widely reported in the sports and legal media.[4]

38.    In approximately January 2018, Meredith Corporation purchased Time, Inc., who had owned FanSided prior to the sale.[5]

39.    Upon information and belief, prior to the sale, Meredith Corporation and its legal counsel reviewed Time, Inc. and FanSided for potential legal exposure, including any potential violation of labor laws, such as the FLSA. Upon information and belief, as a result of this review, senior management at FanSided were alerted to the possibility that their classification of Site Experts as independent contractors was in violation of the FLSA and other labor laws, including the applicability of *Bradley*.

40.    On September 4, 2018, Judge Collyer denied Vox Media's partial motion to dismiss the *Bradley* plaintiffs' willfulness claims under the FLSA. *Bradley*, ECF Nos. 29, 30; *Bradley v. Vox Media, Inc.*, 320 F. Supp. 3d 178, 2018 WH Cases2d 317956 (D.D.C. 2018)

41.    On March 6, 2019, Judge Collyer granted the *Bradley* plaintiffs' motion to

---

[4] *See, e.g.*, "Centennial woman who ran Avalanche website sues Vox Media on claims that SB Nation broke labor laws," Denver Post, 9/2/2017, *available at*:
https://www.denverpost.com/2017/09/02/cheryl-bradley-vox-media-lawsuit/ (last accessed 5/15/2020); "SB Nation Writers, Editors Win Class Status in Overtime Suit," Bloomberg Law, 3/7/2019, *available at*:
https://www.bloomberglaw.com/document/XEEAEIM4000000?bna_news_filter=class-action&jcsearch=BNA%2520000001695865dabaa17bffeffe950000#jcite (last accessed 5/15/2020).
[5] "Meredith sells FanSided to Minute Media for around $15M" *Available at*:
https://nypost.com/2020/01/24/meredith-sells-fansided-to-minute-media-for-around-15m/ (last accessed 5/12/2020)

conditionally certify a collective action of Site Managers under the FLSA. *Bradley*, ECF Nos. 36, 37; *Bradley v. Vox Media, Inc.*, No. 17-1791 (RMC), 2019 BL 75887 (D.D.C. Mar. 06, 2019). This too was reported in the legal media.[6]

42.     In approximately January 2020, Minute Media purchased FanSided from Meredith Corporation.[7]

43.     Upon information and belief, prior to the sale, Minute Media and its legal counsel reviewed Meredith Corporation, Time, Inc. and FanSided for potential legal exposure, including any potential violation of labor laws, such as the FLSA. Upon information and belief, as a result of this review, senior management at FanSided were – *again* - alerted to the possibility that their classification of Site Experts as independent contractors was in violation of the FLSA and other labor laws, including the applicability of *Bradley*.

44.     Despite these red flags, FanSided knowingly chose to disregard the substantial risk that its classification of Site Experts was illegal, and continued to deny its Site Experts minimum wage and overtime pay guaranteed by the FLSA and similar state laws.

45.     Given FanSided's awareness of the *Bradley* litigation, FanSided knew it was illegal to classify Site Experts as independent contractors and fail to ensure they were paid at least the minimum wage and overtime required by law.

46.     Despite its continuing knowledge of the illegality of its practices, FanSided willfully and continually refused to pay its Site Experts minimum wages and overtime due for hours worked, and thus a three-year statute of limitations is applicable to Site Experts in this matter. *See* 29 U.S.C. § 255(a); *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 141–42 (2d Cir. 1999).

---

[6] *Supra*, n. 4.
[7] *Supra*, n. 5.

47.     FanSided does not maintain accurate records of the actual hours that Site Experts worked each workday and the total hours worked each workweek as required by the FLSA. *See* 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c) (requiring employers to maintain payroll records for three years and time sheets for two years, including the exact number of hours worked each day and each week).

48.     FanSided knew or should have known that Site Experts were employees and were not exempt from the FLSA's minimum wage or overtime requirements.

49.     FanSided is a sophisticated multi-national business worth approximately $15 Million.[8] FanSided has access to knowledgeable human resource specialists and competent labor counsel.

50.     FanSided has acted willfully and with reckless disregard of clearly applicable FLSA provisions by failing to compensate Site Experts with pay of at least $7.25 per hour, as required by 29 U.S.C. § 206(a).

51.     FanSided has acted willfully and with reckless disregard of clearly applicable FLSA provisions by failing to compensate Site Experts for all hours worked in excess of forty (40) during the workweek at a rate of not less than one and one half (1.5) times the minimum wage, as required by 29 U.S.C. §§ 206(a), 207(a).

## COLLECTIVE ACTION ALLEGATIONS

52.     Plaintiff brings this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Class defined above.

53.     Plaintiff desires to pursue his claims on behalf of himself and any individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

---

[8] *Supra*, n. 5.

54.     Plaintiff and the FLSA Class are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals were misclassified as independent contractors, worked pursuant to FanSided's previously described common pay practices and, as a result of such practices, were not paid the full and legally mandated minimum wage. Resolution of this action requires inquiry into common facts, including, *inter alia*, FanSided's common compensation, timekeeping, and payroll practices.

55.     Specifically, FanSided paid Plaintiff and the FLSA Class on a biweekly basis, but failed to pay Plaintiff and the FLSA Class at least the minimum wage required by 29 U.S.C. § 206(a).

56.     The similarly situated employees are known to FanSided, are readily identifiable, and may be located through FanSided's business and human resource records.

57.     FanSided employs many FLSA Class Members. These similarly situated employees may be readily notified of this action through direct U.S. mail and/or other appropriate means, and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for minimum wage compensation, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

## COUNT I
### Minimum Wage Violation, 29 U.S.C. § 206(a)
### (On Behalf of the FLSA Class)

58.     All previous paragraphs are incorporated as though fully set forth herein.

59.     The FLSA requires that covered employees be compensated for all hours worked at a rate of not less than $7.25 per hour. *See* 29 U.S.C. § 206(a)(1).

60.     FanSided is subject to the wage requirements of the FLSA because FanSided is an "employer" under 29 U.S.C. § 203(d).

61.     At all relevant times, FanSided is an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

62.     During all relevant times, Plaintiff and the FLSA Class are covered employees entitled to the above-described FLSA's protections. *See* 29 U.S.C. § 203(e).

63.     Plaintiff and the FLSA Class are not exempt from the requirements of the FLSA. Plaintiffs and the FLSA Class are entitled to be paid for all hours worked at a rate of not less than $7.25 per hour, pursuant to 29 U.S.C. § 206(a)(1).

64.     FanSided's compensation scheme, applicable to Plaintiff and the FLSA Class, failed to comply with 29 U.S.C. § 206(a)(1).

65.     FanSided knowingly failed to compensate Plaintiff and the FLSA Class for all hours worked at a rate of not less than $7.25 per hour, in violation of 29 U.S.C. § 206(a)(1).

66.     FanSided also failed to make, keep, and preserve records with respect to Plaintiff and the FLSA Class sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA.  29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

67.     In violating the FLSA, FanSided acted willfully and with reckless disregard of clearly applicable FLSA provisions.

68.     Pursuant to 29 U.S.C. § 216(b), employers such as FanSided, who intentionally fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks the following relief on behalf of himself and all others similarly situated:

    a.  An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

    b.  Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Class members;

    c.  Back pay damages (including unpaid minimum wage compensation) and prejudgment interest to the fullest extent permitted under the law;

    d.  Liquidated damages to the fullest extent permitted under the law;

    e.  Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

    f.  Such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury for all issues of fact.

Dated:  June 22, 2020              Respectfully Submitted,

James E. Goodley (NY Reg. No. 5724083)
Marc. L. Gelman*
Ryan P. McCarthy*
JENNINGS SIGMOND, P.C.
1835 Market Street, Suite 2800
Philadelphia, PA 19103
Telephone: (215) 351-0613
jgoodley@jslex.com
mgelman@jslex.com
rmccarthy@jslex.com

*Attorneys for Plaintiff and the FLSA Class*

*\* Pro Hac Vice Application Forthcoming*