**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **BRANDON CARUSILLO, *et al*., individually and on behalf of all persons similarly situated,** : | |
| : | |
| : | |
| : | **Case No.: 1:20-cv-04766-JPO** |
| **Plaintiffs** : | |
| : | **Collective Action** |
| **v.** : | |
| : | **Jury Trial Demanded** |
| : | |
| **FANSIDED, INC., *et al.*** : | |
| : | |
| **Defendants.** : | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR APPROVAL OF
COMMUNICATIONS WITH PUTATIVE COLLECTIVE MEMBERS**

Dated:  December 7, 2020

Respectfully Submitted,

/s/ James E. Goodley
James E. Goodley (NY Reg. No. 5724083)
GOODLEY LAW LLC
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 394-0541
james@goodleylaw.net

*Attorney for Plaintiffs and the FLSA Class*

**TABLE OF CONTENTS**

INTRODUCTION.................................................................................................. 1

BACKGROUND .................................................................................................. 4

    **A.**  **Existing Site Expert Agreement (With Litigation Carve-Out),**................................. 4

**ECF Nos. 42-1 and 42-2** ................................................................................. 4

    **B.**  **Prospective Site Expert Agreement (No Litigation Carve-Out),**............................ 4

**ECF No. 42-3** .................................................................................................. 4

    **C.**  **Paid Contributor Agreement, ECF Nos. 42-4 (General) and 21-6 (V. Page)** ............. 5

    **D.**  **Defendants' Desired Further Revised Expert Services Agreement and Communication (No Litigation Carve-Out)** ........................................................ 5

ARGUMENT ....................................................................................................... 6

**I.**  **The *Hoffman-LaRoche* Collective Action Opt-In Notice Process Does Not Permit An Employer to Send Post-Complaint (Even Opt-Out) Arbitration Agreements or Related Communications to Putative Class Members** .................................................... 6

    **A.**  **Notice Process Generally** ........................................................................... 6

    **B.**  **The Promulgation of Post-Complaint Arbitration Agreements is an Improper Communication With Putative Class Members and the Court Should Not Permit It** 7

    **C.**  **Defendants' Arbitration Agreements Here Are Improper Communications** ............. 9

    **D.**  **Plaintiffs' Proposed Alternative** ................................................................. 13

**CONCLUSION** ................................................................................................. 13

## INTRODUCTION

Through their Motion for Approval of Communications, ECF No. 41, Defendants ask the Court to allow them to improperly dissuade Site Experts from joining this litigation by turning the well-settled opt-in process on its head.  Rather than agree that the Court authorize the parties moving for conditional certification, *Plaintiffs and their counsel,* to send neutral approved notices to putative class members, informing them of their right to join the case and enclosing an opt-in form to return for filing (as is always done), Defendants seek the Court's authorization to do the unheard of.  That is, Defendants ask the Court to authorize *Defendants* to send out their own (undefined[1]) communications to putative class members, providing them yet another confusing Site Expert agreement to sign, which would contain an arbitration clause <u>without a carve-out for this litigation</u>.  In the face of Plaintiffs' criticism that this is an improper communication under *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989) and "an improper attempt to undermine [collective action procedures] by encouraging class members not to join the suit," *Belt v. Emcare, Inc.,* 299 F.Supp.2d 664, 667 (E.D.Tex.2003), Defendants argue that this process is fair, due to the right of the Site Expert to opt out of arbitration.

But Defendants' proposal is a devil in disguise because it would, at minimum, create a needlessly burdensome and confusing process for a Site Expert who desires to join this case, certain to drastically reduce the rate of participation in this case, in conflict with the opt-in process the Supreme Court authorized in *Hoffmann-La Roche*.  Since "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought," 29 U.S.C. § 216(b), under Defendants' proposal, a Site Expert who desires to join this action would need to first opt <u>out</u> of

---

[1] See Defendants' Motion at pp. 15, n. 4.

arbitration (by following Defendants' contractual procedures), and *then* opt <u>in</u> to this litigation by returning a consent form to Plaintiffs' counsel for filing on the docket.  As a result, those who do not timely opt-out of arbitration in accordance with Defendants' procedures will not even receive notice of their right to join this case because the Site Expert, "<u>also waives [his or her] right to receive notice of any class or collective action that may be pending and/or filed.</u>" **Agreement at ¶ 11.3** (emphasis added).

This would be a serious problem.  "Because FLSA plaintiffs must opt-in, unsupervised, unilateral communications with those potential plaintiffs can sabotage the goal of the FLSA's informed consent requirement by <u>planting the slightest seed of doubt or worry through the one-sided, unrebutted presentation of 'facts.'</u>" *Agerbrink v. Model Serv. LLC*, 2015 U.S. Dist. LEXIS 145563, at *9 (S.D.N.Y. Oct. 27, 2015) (Oetken, J.)) (quoting *Billingsley v. Citi Trends, Inc.,* 560 F.App'x. 914, 924 (11th Cir. 2014); emphasis added).

Why do Defendants insist on such a complicated and confusing multi-step procedure?  Assuming conditional certification will be granted, why wouldn't Defendants allow the opt-in process to unfold as it normally does?  Why do they insist that the arbitration communication occur <u>before</u> the opt-in process?  Make no mistake about it, the only purpose for which Defendants seek the Court's permission to roll out another round of arbitration agreements (prior to the opt-in process) is to minimize participation (and thus their FLSA liability) by creating confusion and further unfair obstacles to Site Experts who wish to join this litigation.  The economies of scale inherent in this already existing collective action[2] would be destroyed if

---

[2] *See, e.g., In re Modafinil Antitrust Litig*., 837 F.3d 238, 242 (3d Cir. 2016) ("The class action is an ingenious device for economizing on the expense of litigation and enabling small claims to be litigated. The two points are closely related. If every small claim had to be litigated separately, the vindication of small claims would be rare. The fixed costs of litigation make it impossible.") (*quoting Thorogood v. Sears, Roebuck and Co*., 547 F.3d 742, 744 (7th Cir. 2008)).

Defendants have their way.  If such a putative class member who did not opt-out of arbitration wished to pursue their claims, they would be stuck trying to find a lawyer willing to take on an individual arbitration, possibly even needing to share the cost of that arbitration.

The facts of this case are almost identical to the facts in *Williams v. Securitas Sec. Servs. USA, Inc.*, No. CIV.A. 10-7181, 2011 WL 2713741, at *4 (E.D. Pa. July 13, 2011), which led the court in that case to hold that, "[t]he confusing nature of the [post-lawsuit arbitration] Agreement [containing a 30-day opt-out window] may cause [defendant's] employees to misunderstand the nature of their rights to participate in this litigation while the court determines whether to conditionally certify a class, damage not easily undone."  Instead of opening up a pandora's box by following Defendants' novel suggestion (surely encouraging scores of defendants to engage in similar gamesmanship in the future), the Court should instead employ the traditional opt-in process under *Hoffmann-La Roche* and *Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010) and deny Defendants' motion.

Plaintiffs' Counsel does not take issue if Defendants wish to roll out arbitration communications <u>after the notice period has ended</u>, as long as that communication and arbitration agreement make it clear that those agreements do not cover the claims of anybody who did opt in to the case (i.e., includes a litigation carve-out).  If the Court allows this process, there would no longer be any risk of improper "contacts [with] putative class members for the purpose of altering the status of a pending litigation," *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 253 (S.D.N.Y. 2005) or "improper attempt[s] to undermine [collective action procedures] by encouraging class members not to join the suit[,]" *Belt v. Emcare, Inc.,* 299 F.Supp.2d 664, 667 (E.D.Tex.2003), because the opt-in period would have ended.  Taking this traditional route would serve everyone's interests: putative class members' right to join this

3

action without coercion or confusion, while allowing Defendants to provide <u>pre-dispute</u> arbitration agreements to Site Experts. Mot. at pp. 1.  That process would not require the Court's oversight, other than an order that the communication may only occur *after* the opt-in process ends and that any arbitration agreement include a *carve-out* for those who joined this case. Plaintiffs respectfully request that the Court not take up Defendants' proposal to "re-invent the wheel" and instead deny Defendants' Motion for Approval of Communications and grant Plaintiffs' Motion for Conditional Certification and Corrective Notice.

## <u>BACKGROUND</u>

A.   **Existing Site Expert Agreement (With Litigation Carve-Out), ECF Nos. 42-1 and 42-2**

On August 1, 2020, after this action was initiated, FanSided issued new Expert Services Arbitration Agreements to all those who had been Site Experts prior to that date.  **Decl. of Z. Best, ECF No. 42 ("Best Decl.") at ¶ 7**.  That agreement includes a <u>carve-out for this litigation</u>:

> <u>Pending Litigation</u>. This Arbitration Agreement does not apply to the lawsuit titled *Carusillo v. Sportority, Inc.* pending in the Southern District of New York, Case No. 1:20-cv-04766 ("*Carusillo* Lawsuit"). <u>Therefore, if the Court determines that you are eligible to participate in the *Carusillo* Lawsuit, you may do so **regardless of whether you opt out of this Arbitration Agreement**</u>. However, if the *Carusillo* Lawsuit is covered by a prior agreement to arbitrate between You and Sportority, that prior agreement will continue to apply with full force and effect. In addition, unless you opt out of this Arbitration Agreement, this Arbitration Agreement will apply to any and all other litigation, even if that litigation asserts the same claims those asserted in the *Carusillo* Lawsuit.

ECF No. 42-1 at ¶ 11.1 (emphasis added).

B.   **Prospective Site Expert Agreement (No Litigation Carve-Out), ECF No. 42-3**

However, "anyone who became a Site Expert for this first time after August 1, 2020, was given the new version of the Expert Services Agreement, except that it <u>d[oes] not contain a carve-out</u> for the *Carusillo* lawsuit." **Best Decl. at ¶ 10 (emphasis added); ECF No. 42-3.** This

4

agreement contains a "Class and Collective Action Waiver," and "also waives [Site] Expert's <u>right</u> <u>to receive notice of any class or collective action that may be pending and/or filed.</u>"  **ECF No. 42-3 at ¶¶ 11.3, 11.9**.

 **C. Paid Contributor Agreement, ECF Nos. 42-4 (General) and 21-6 (V. Page) (No Litigation Carve-Out)**

 "On August 1, 2020, FanSided also issued a new Paid Contributor Agreement to all FanSided contributors, which contained the same features as the Expert Services Agreement, but without the *Carusillo* carve-out."  **Best Decl. at ¶ 11**.

 Site Expert Vincent Page, who served in that capacity from May 2017 through January 2020, testified that on or about August 4, 2020, FanSided required him to sign a new form contract, which included an arbitration clause.  **Decl. of V. Page, ECF No. 21-6 ("Page Decl.") ¶ 23, Ex. 1 at ¶ 11 ("Page Arbitration Agreement").**  The agreement (appearing to be substantially similar to the Paid Contributor Agreement) contains an arbitration clause and a class and collective action waiver, which explicitly includes <u>pending claims</u> such as those in this action. ***Id*. at ¶ 11.1**.  The agreement even states that the Site Expert, "also waives [his or her] <u>right to receive notice of any class or collective action that may be pending and/or filed.</u>" ***Id*. at ¶ 11.3** (emphasis added).

 **D. Defendants' Desired Further Revised Expert Services Agreement and Communication (No Litigation Carve-Out)**

 Defendants intend to roll out a further revised Expert Services Agreement that explicitly applies to this litigation (i.e., without a litigation carve-out):

> With the Court's permission, FanSided would like to roll out a further update to the Expert Services Agreement to putative collective members <u>that removes the</u> <u>*Carusillo* carve out</u>, but would permit Site Experts to opt-out to the extent they wish to participate in *Carusillo*. FanSided also intends to issue a communication to Site Experts explaining the changes to the Expert Services Agreement and the

significance of the decision about whether to opt out of the new arbitration agreement as it relates to this litigation. FanSided will also give Site Experts a reasonable time to review and sign the Expert Services Agreement.

**Best Decl. at ¶ 13**.  Although Site Experts might be eligible to join this lawsuit, if Defendants'

Motion were granted, Site Experts could only join if they first opted-out of the Revised Expert

Services Agreement, *id*., and then opted-in pursuant to 29 U.S.C. § 216(b).

## ARGUMENT

**I.    The *Hoffman-LaRoche* Collective Action Opt-In Notice Process Does Not Permit An Employer to Send Post-Complaint (Even Opt-Out) Arbitration Agreements or Related Communications to Putative Class Members**

### A.    Notice Process Generally

The FLSA permits a plaintiff to pursue a collective action on his or her own behalf and

on behalf of "other employees similarly situated." 29 U.S.C. § 216(b).  "The collective action

procedure allows for efficient adjudication of similar claims, so 'similarly situated' employees,

whose claims are often small and not likely to be brought on an individual basis, may join

together and pool their resources to prosecute their claims."  *Lynch v. United Servs. Auto. Ass'n*,

491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007) (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S.

165, 170 (1989)).

For others in the putative class to participate in FLSA litigation, they must affirmatively

sign a consent form, which must be filed on the docket by Plaintiff's Counsel.  29 U.S.C. §

216(b) ("No employee be a party plaintiff to any such action unless he gives his consent in

writing to become such a party and such consent is filed in the court in which such action is

brought.").  It is only at the point that a consent form is filed that a putative class member's claim

is tolled, 29 U.S.C. § 256, which means that time is of the essence.

6

It goes without saying that putative class members cannot make the important decision to join a collective action unless they are made aware of that right.  Accordingly, "district courts have discretion, in appropriate cases, to implement [Section 216(b)] by facilitating notice to potential plaintiffs." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989).  For putative class members to be informed of their right to join this case, Plaintiffs seeks, according to *Hoffmann-La Roche* and Second Circuit precedent, the Court's authorization to send notice to all putative members of this collective action. See *Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010) and Plaintiffs' Motion for Conditional Certification and Corrective Notice, ECF No. 21.

B.      **The Promulgation of Post-Complaint Arbitration Agreements is an Improper Communication With Putative Class Members and the Court Should Not Permit It**

"'Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class [or collective] action and to enter appropriate orders governing the conduct of counsel and the parties.'"  *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171(1989) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981)).  "Under *Hoffman–La Roche,* [courts have] a responsibility to prevent confusion and unfairness concerning [an] action in which plaintiffs seek to have the matter proceed as a collective action and to insure that all parties act fairly while the court decides whether and how this action will move forward under the FLSA."  *Williams v. Securitas Sec. Servs. USA, Inc.*, No. CIV.A. 10-7181, 2011 WL 2713741, at *3 (E.D. Pa. July 13, 2011);  *see also Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 756 (9th Cir. 2010), judgment vacated on other grounds, 132 S. Ct. 74 (2011) (Courts must "impose limitations when a party engages in behavior that threatens the fairness of the litigation.").

Courts should enter orders to protect absent class members who may be subject to coercive or misleading communications, particularly those designed to improperly attempt those class members to exclude themselves from the litigation.  *See, e.g., In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 253 (S.D.N.Y. 2005) ("Indeed, when a defendant contacts putative class members for the purpose of altering the status of a pending litigation, such communication is improper without judicial authorization."); *Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914, 922 (11th Cir. 2014) ("The district court simply did what other district courts routinely do: exercise discretion to correct the effects of pre-certification communications with potential FLSA collective action members after misleading, coercive, or improper communications are made."); *Belt v. Emcare, Inc.,* 299 F.Supp.2d 664, 667 (E.D.Tex.2003) (A court may "limit communications with absent class members where the communications were ... an improper attempt to undermine Rule 23 by encouraging class members not to join the suit."); *Agerbrink v. Model Serv. LLC*, 2015 U.S. Dist. LEXIS 145563, at *9 (S.D.N.Y. Oct. 27, 2015) (Oetken, J.) ("[b]ecause FLSA plaintiffs must opt-in, unsupervised, unilateral communications with those potential plaintiffs can sabotage the goal of the FLSA's informed consent requirement by <u>planting the slightest seed of doubt or worry through the one-sided, unrebutted presentation of 'facts.</u>'") (quoting *Billingsley* at 924; emphasis added).

With this background in mind, courts have routinely held that a defendant's promulgation of an arbitration agreement to putative class members with respect to their claims <u>in an already-pending lawsuit</u> is coercive, misleading and improper.  Those courts often invalidate such arbitration agreements and issue a corrective notice[3] so that the putative class member is

---

[3] As to arbitration agreements without litigation carve-outs which Defendants presented to putative class members, Plaintiffs have sought corrective language to be included in their notice

informed that they may join the pending litigation, notwithstanding the existence of an

arbitration agreement.  *See, e.g.*, *Williams v. Securitas Sec. Servs. USA, Inc.*, No. CIV.A. 10-

7181, 2011 WL 2713741, at *4 (E.D. Pa. July 13, 2011) ("The confusing nature of the [post-

lawsuit arbitration] Agreement [containing a 30-day opt-out window] may cause [defendant's]

employees to misunderstand the nature of their rights to participate in this litigation while the

court determines whether to conditionally certify a class, damage not easily undone."); *In re*

*Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 253 (S.D.N.Y. 2005) (in Rule 23

class action, holding post-lawsuit arbitration agreements unenforceable); *Camp v. Alexander*, No.

C-13-03386(EDL), 2014 WL 12701508, at *6 (N.D. Cal. July 9, 2014) ("Defendants shall issue

the notice to all employees who signed the Arbitration Agreement Acknowledgment within one

week of the date of this Order."); *Oconner v. Agilant Sols., Inc.*, 444 F. Supp. 3d 593, 597

(S.D.N.Y. 2020).

### C.   Defendants' Arbitration Agreements Here Are Improper Communications

Defendants' arbitration communications are similarly problematic.  In their motion,

Defendants unabashedly propose to roll-out post-complaint arbitration agreements to putative

class members in this case that do not contain litigation carve-outs, and insist on injecting a

complicated and confusing procedure where putative class members may only join this case if

they timely opt-out of arbitration (following Defendants' contractual procedures) and then opt-in

to this case under 29 U.S.C. § 216(b).  Those who do not timely opt-out of arbitration in

accordance with Defendants' procedures will not even receive notice of their right to join this

case because the Site Expert, "also waives [his or her] right to receive notice of any class or

---

of collective action lawsuit.  See Motion for Conditional Certification and for Issuance of
Corrective Notice, ECF No. 21-1 at Part III.

collective action that may be pending and/or filed." **Agreement at ¶ 11.3** (emphasis added). The proposed communications plainly interfere with the Court's authority to oversee this collective action under *Hoffman-LaRoche* and constitute "an improper attempt to undermine [collective action procedures] by encouraging class members not to join the suit," *Belt v. Emcare, Inc.,* 299 F.Supp.2d 664, 667 (E.D.Tex.2003).

The facts in this case closely resemble those in *Securitas*. In that case, after an FLSA collective action lawsuit was filed, the employer proposed to present arbitration agreements (with a 30-day opt-out window) to the putative class members, covering their pending claims. Relying on *Hoffman–La Roche,* Judge Bartle forcefully invalidated the already-promulgated agreements in that case and ordered a corrective notice to cure the damage:

> Under *Hoffman–La Roche,* this court has a responsibility to prevent confusion and unfairness concerning this action in which plaintiffs seek to have the matter proceed as a collective action and to insure that all parties act fairly while the court decides whether and how this action will move forward under the FLSA. In the meantime, to prevent confusion and unfairness, we will order Securitas to rescind the [opt-out Arbitration] Agreement with respect to its Pennsylvania employees as it relates to this litigation. We will require Securitas to set forth the nature of this action and advise its Pennsylvania employees that the Agreement is not binding with regard to those employees' right to participate in this lawsuit, **notwithstanding the fact that the employee may have signed the Agreement or failed timely to opt out.**
>
> …
>
> Securitas argues that invalidating the Agreement merely because this class action lawsuits is pending is equivalent to preventing it from adopting any arbitration policy at all. Whatever right Securitas may have to ask its employees to agree to arbitrate, its current effort, which specifically references this lawsuit, is confusing and misleading and clearly designed to thwart unfairly the right of its employees to make an informed choice as to whether to participate in this collective action under the FLSA. Since the Agreement by its terms will directly affect this lawsuit, this court has authority to prevent abuse and to enter appropriate orders governing the conduct of counsel and the parties. *Hoffman–La Roche,* 493 U.S. at 171–72. Securitas did not act fairly when it gave notice through the Agreement to potential class members concerning this lawsuit.

*Securitas*, 2011 WL 2713741, at *3 (emphasis and alteration added).

Even worse, some of those who are putative class members already received such improper communications without carve-outs: those who became Site Experts on August 1, 2020 or later and those who, like Vincent Page, were Site Experts but later received a contributor arbitration agreement. **See Best Decl. at ¶ 10, Page Decl. at Ex. 1; ECF Nos. 42-3 and 42-4**. Approximately six weeks after this collective action lawsuit was filed, Defendants promulgated Arbitration Agreements to FanSided's Site Experts and Contributors containing opt-out arbitration clauses with class and collective action waivers. Not only does the Arbitration Agreement reference FLSA Claims, ¶ **10.1**, but it also specifically includes pending claims, and a waiver of a putative FLSA Class member's right to even receive notice of pending claims. ***See Arbitration Agreement at ¶¶ 11, 11.1, 11.3*** ("Both Sportority and You agree to bring any dispute in arbitration on an individual basis only, and not on a class or collective action basis … Paid Contributor also waives Paid Contributor's right to receive notice of any class or collective action that may be pending and/or filed.); *see also* ¶ **11.2** (stating that the arbitration agreement applies to "any claim that Paid Contributor is an employee of Sportority . . . minimum wage, expense reimbursement, overtime, breaks and rest periods…").

These actions require the corrective notice proposed by Plaintiffs. See ECF No. 21-1 at Part III. It makes no difference that "FanSided [claims it] has no intention of enforcing the Arbitration Agreement in the Paid Contributor Agreement with respect to claims any current or former Site Expert might be eligible to bring in the *Carusillo* case," **Best Decl. ¶ 12**, or "was days away from issuing its updated Expert Services Agreement." Mot. at pp. 2. What matters is how the communication might be interpreted by a putative class member. At a minimum, these multiple communications are confusing, and are likely to have the effect of dissuading putative class members from joining the case.

11

The Arbitration Agreements here – be they the proposed Expert Agreement, the Expert Agreement already promulgated those who began August 1, 2020 or later, or the Contributor Agreement which was directed towards any Site Expert in the putative class – are clearly designed to confuse, intimidate[4] and otherwise improperly dissuade putative class members from joining this litigation.  This is exactly the type of improper communication to putative class members that the Supreme Court envisioned in *Hoffman-LaRoche* and *Gulf Oil* district courts would and should prohibit.  The Court should follow Judge Bartle's lead in *Securitas*, as well as the great weight of authority on this subject, by rejecting Defendants' invitation to needlessly obstruct the opt-in process with these post-Complaint, pre-opt-in, arbitration agreements.

Defendants' arbitration opt-out proposal is a red-herring that does not change this reality.  Since "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought," 29 U.S.C. § 216(b), under Defendants' proposal, a Site Expert who desires to join this action would need to first opt <u>out</u> of arbitration (by following Defendants' contractual procedures), and *then* opt <u>in</u> to this litigation by returning a consent form to Plaintiffs' counsel for filing on the docket.  Those Site Experts who do not timely opt-out of arbitration would never even receive notice of their right to join this case.  This process would create needless burdens, and the risk of confusion and dissuading putative class members from joining the case far outweighs any perceived "right" that Defendants claim to have to roll out post-lawsuit arbitration agreements to minimize their FLSA liability.

---

[4] The Arbitration Agreements even includes an indemnification provision, ¶ 10.1, in which if a Contributor who worked under a Site Expert sues Sportority, FanSided or any other related company, <u>Defendants could assert an indemnification claim against the Site Expert</u>, an individual making less than $7.25 per hour.

### D.      Plaintiffs' Proposed Alternative

Plaintiffs' alternative is simple and easy to administer: Plaintiffs' Motion for Conditional

Certification, ECF No. 21, should be granted because they meet the relevant lenient standard laid

out therein, and the Court should approve a notice similar to that Plaintiffs have proposed, ECF

No. 21-7.[5]  The notice would still need to contain clarifying corrective language (similar to that

Plaintiffs' proposed) explaining to putative class members that even if they received an

arbitration agreement of some kind from Defendants,[6] they are still entitled to join this action,

without any fear of retaliation and without the need to opt-out of Defendants' arbitration process.

Defendants' Motion for Approval of Communications should be denied in its entirety.

Defendants would still be permitted (without the need for ongoing Court oversight) to send out

arbitration communications <u>after the opt-in period closes</u>, so long as the arbitration agreement

plainly carves out the *Carusillo* litigation, similar to ECF No. 42-1, ¶ 11.1.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants'

Motion For Approval of Communications With Putative Collective Members.

Dated: December 7, 2020                          Respectfully Submitted,

                                                 /s/ James E. Goodley
                                                 James E. Goodley (NY Reg. No. 5724083)
                                                 GOODLEY LAW LLC
                                                 One Liberty Place
                                                 1650 Market Street, Suite 3600

---

[5] The Notice would require minor edits to state that the Site Expert class includes those who worked under co-Defendant FanSided, Inc., or co-Defendant Sportority, Inc. (now merged into the same entity, ECF No. 29) and that there is now a co-Plaintiff, David Gate.  However, Plaintiffs do not agree with Defendants' suggestion raised in their opposition to conditional certification, ECF No. 43 at pp. 24, that further briefing on this topic is necessary.

[6] Such as was the case with Vincent Page or those Site Experts who began to work for Defendants on August 1, 2020 or later.

13

Philadelphia, PA 19103
Telephone: (215) 394-0541
james@goodleylaw.net

*Attorney for Plaintiffs and the FLSA Class*