UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td>
BRANDON CARUSILLO and DAVID GATE, <em>on behalf of himself and others similarly situated</em>,<br><br>
                    Plaintiffs,<br><br>
          -v-<br><br>
FANSIDED, INC., d/b/a FANSIDED, <em>et al.</em>,<br><br>
                   Defendants.
</td><td>
20-CV-4766 (JPO)<br><br>
<u>OPINION AND ORDER</u>
</td></tr>
</table>

J. PAUL OETKEN, District Judge:

Plaintiffs Brandon Carusillo and David Gate, individually and on behalf of all persons similarly situated, filed a collective action complaint against Defendants FanSided, Inc., d/b/a FanSided ("FanSided") and Sportority, Inc., d/b/a Minute Media, d/b/a FanSided ("Sportority," and collectively "Defendants"), alleging violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et. seq.* ("FLSA"). Carusillo additionally seeks relief in his individual capacity for violations of Massachusetts law.

Plaintiffs have moved to certify a collective pursuant to 29 U.S.C. § 216(b). They also request that the Court toll the statute of limitations of all potential opt-in plaintiffs from the date this action was filed — June 22, 2020 — through the conclusion of the action. Defendants have moved to dismiss Plaintiffs' second amended complaint ("SAC"). They also request that the Court permit Defendants to communicate with putative members to roll out an updated Expert Services Agreement that includes an arbitration agreement with no carve-out provision for this litigation.

I.      **Background**

A.      **Factual Allegations**[1]

FanSided, a media corporation that operates sports and other special interest websites, merged with Minute Media in May 2020.  (Dkt. No. 30 ¶ 11.)  In approximately August 2017 and January 2018, respectively, Plaintiffs Carusillo and Gate signed "Expert Services Agreements," which governed the terms of their employment with Defendants.  (Dkt. No. 30 ¶¶ 13, 15.)  From approximately January 2018 to June 7, 2018, Carusillo served as a "Site Expert" for one of FanSided's sports websites, and from approximately August 2017 to January 2020, Gate served as a Site Expert for a different FanSided sports website.  (Dkt. No. 30 ¶¶ 14, 16.)  Each website for which Carusillo and Gate produced content had an Editorial Director whose role was to hire and supervise site experts at FanSided.  (Dkt. No. 30 ¶¶ 19–21.)  Pursuant to the Expert Services Agreements, Carusillo and Gate were required to create content for the FanSided websites.  (Dkt. No. 30 ¶ 17.)

During Carusillo's employment, he watched and analyzed Boston Red Sox games, published at least twenty articles a week, managed unpaid writers, edited new writers' articles, monitored search engine optimization data, and managed the comment sections on FanSided's Red Sox website, known as "BoSox Injection."  (Dkt. No. 30 ¶ 22.)  Additionally, Carusillo controlled BoSox Injection's Twitter account.  (Dkt. No. 30 ¶ 23.).  Carusillo consistently worked about thirty to thirty-five hours per week during the baseball season and slightly less during the offseason.  (Dkt. No. 30 ¶ 24.)  He was paid about $150-$220 every two weeks, resulting in an hourly wage of $2.14-$4.40.  (Dkt. No. 30 ¶ 24.)  Gate performed substantially

---

[1] The following facts, drawn from the SAC, are presumed true for the purposes of this opinion and order.

similar work but for FanSided's Liverpool soccer team website, known as "Rush the KOP." (Dkt. No. 30 ¶¶ 25–26.)  Gate consistently worked about thirty hours per week.  (Dkt. No. 30 ¶ 27.)  He was paid about $300-$400 every two weeks, resulting in an hourly wage of $5.00-$6.66 per hour.  (Dkt. No. 30 ¶ 27.)

### B.    Procedural History

On June 22, 2020, Carusillo filed a complaint alleging violations of the FLSA against FanSided, Inc.  (Dkt. No. 1.)  On June 26, 2020, Carusillo filed an amended complaint in which Carusillo, in his individual capacity, additionally alleged violations of the Massachusetts Fair Minimum Wage Act, M.G.L. c. 151 § 1.  (Dkt. No. 9.)  On September 4, 2020, Carusillo filed a motion to conditionally certify a collective action.  (Dkt. No. 21.)  Defendants filed a motion to dismiss the amended complaint (Dkt. No. 24), and Plaintiffs filed a second amended complaint in response, adding Gate as a plaintiff.  (Dkt. No. 30.)  Plaintiffs also filed a motion seeking to toll the statute of limitations for putative collective members' FLSA claims from the date of the filing of the first complaint, June 22, 2020, until the resolution of this action.  (Dkt. No. 32.)  On October 30, 2020, Defendants moved to dismiss the SAC and sought approval to communicate with putative collective members.  (Dkt. Nos. 35 and 40.)

## II.   Discussion

### A.    Motion to Dismiss

The party facing a motion to dismiss under Rule 12(b)(6) must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In resolving a motion to dismiss, the court "must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Doe v. Indyke*, 457 F. Supp. 3d 278, 282 (S.D.N.Y. 2020) (citing *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014)).

3

In their motion to dismiss, Defendants make the following arguments: (1) Plaintiffs'
FLSA claims should be dismissed because they are time barred; (2) Plaintiffs' federal claims and
Carusillo's state claim should be dismissed because they have not sufficiently alleged an
employment relationship with Defendants; and (3) Plaintiffs' federal and state claims should be
dismissed because they failed to sufficiently allege that they suffered a minimum wage violation.
(Dkt. No. 36 at 6–25.).[2]  Each argument is addressed in turn.

### 1.  Statute of Limitations

Generally, an action under the FLSA has a two-year statute of limitations for the recovery
of back pay.  *See* 29 U.S.C. § 255(a).  However, "a cause of action arising out of a willful
violation may be commenced within three years after the cause of action accrued."  *Id.*  Carusillo
worked for Defendants from January 2018 to June 7, 2018, and Gate worked for Defendants
from August 2017 to January 2020.  The complaint was filed on June 22, 2020.  If the two-year
statute of limitations applies, as Defendants argue, any alleged violation of the FLSA prior to
June 22, 2018 would be time barred (*see* Dkt No. 36 at 6–13), knocking Carusillo out of the
action altogether, and limiting Gate's claims to between June 22, 2018 and June 22, 2020.  But if
the three-year statute of limitations applies, as Plaintiffs argue, only alleged violations prior to
June 22, 2017 would be time barred.

Although Plaintiffs point to case law in this Circuit that concluded that simply alleging
that a defendant acted willfully is enough to pass muster at the pleading stage (*see* Dkt. No. 58 at
13–14), the Second Circuit recently weighed in on this issue and held otherwise.  In *Whiteside v.
Hover-Davis, Inc.*, over the dissent of Judge Chin, the Second Circuit held that "the mere

---

[2] Defendants moved to dismiss Plaintiffs' First Amended Complaint on September 14,
2020.  (Dkt. No. 24.)  Plaintiffs' filing of the Second Amended Complaint renders moot the
original motion to dismiss and it is therefore denied as moot.

allegation of willfulness is insufficient to allow an FLSA plaintiff to obtain the benefit of the three-year exception at the pleadings stage.  Rather, a plaintiff must allege facts that permit a plausible inference that the defendant willfully violated the FLSA for that exception to apply." 995 F.3d 315, 320 (2d Cir. 2021).

Plaintiffs primarily argue that litigation in the District Court for the District of Columbia challenging practices similar to those at issue here put Defendants on notice that there was a substantial risk that their practices were illegal.  (*See* Dkt. No. 48 at 15–16.)  In *Bradley v. Vox Media*, *Inc.*, a group of individuals who worked at Vox Media as "Site Managers" for various Vox sports websites sued the company for FLSA violations on the grounds that they were improperly classified as independent contractors.  *See* 320 F. Supp. 3d 178, 179–81 (D.D.C. 2018).  Indeed, the Site Managers at Vox appear to have roles that are very similar to those of the Site Experts at FanSided: they watched sports games, published articles on those games, managed other writers, monitored search engine optimization, and controlled the websites' social media accounts.  *See id.*  The *Bradley* action was filed in September 2017 and Plaintiffs allege that Defendants were aware of the litigation since its inception.  (*See* Dkt. No. 30 at ¶¶ 47, 49.) The *Bradley* action was also widely reported — in September 2018, the sports website, Deadspin, published an article about Defendants' labor practices for Site Experts, mentioned the *Bradley* action, and requested a comment from FanSided's CEO, who declined to comment. (*See* Dkt. No. 30 at ¶¶ 47, 51.)

Plaintiffs have sufficiently alleged willfulness at this early stage of litigation.  Based on the SAC, this Court can plausibly infer that Defendants were on notice that very similar conduct was being challenged in the *Bradley* action and yet failed to take any action to remedy these

alleged violations.  Accordingly, the three-year statute of limitations applies, and only alleged

violations prior to June 22, 2017 are time barred.

## 2.    Failure to Allege an Employment Relationship

"To state a FLSA minimum wage claim, a plaintiff must allege that she was the

defendant's employee, that her work involved interstate activity, and that she worked hours for

which she did not receive minimum and/or overtime wages."  *Tackie v. Keff Enters. LLC*, No. 14

Civ. 2074, 2014 WL 4626229, at *2 (S.D.N.Y. Sept. 16, 2014).[3]

The parties dispute whether Plaintiffs have sufficiently alleged that Defendants were their

"employers" under the FLSA and Massachusetts law.  Defendants argue that Plaintiffs were

properly classified independent contractors rather than employees.  To determine whether a

plaintiff is an employee under the FLSA, courts consider the "economic reality" of a working

relationship: "(1) the degree of control exercised by the employer over the workers, (2) the

worker's opportunity for profit or loss and their investment in the business, (3) the degree of skill

and independent initiative required to perform the work, (4) the permanence or duration of the

working relationship, and (5) the extent to which the work is an integral part of the employer's

business."  *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058–59 (2d Cir. 1988) (citations

omitted).  Central to this analysis is whether a defendant has control of employees.  *See Lopez v.

Acme Am. Envtl. Co., Inc.*, No. 12 Civ. 511, 2012 WL 6062501, at *3 (S.D.N.Y. Dec. 6, 2012)

("When it comes to employer status under the FLSA, control is key." (internal quotation marks

omitted)). The factors considered under Massachusetts law are similar.  *See Somers v. Converged

Access, Inc.*, 454 Mass. 582, 589 (2009).

---

[3] Under Massachusetts law, it is "against public policy for any employer to employ any person in an occupation in this commonwealth at an oppressive and unreasonable wage," which is less than $13.50 per hour.  *See* M.G.L. ch. 151 § 1.

Defendants argue that Plaintiffs asserted only conclusory allegations to establish an employment relationship.[4]  (Dkt. No. 36 at 15).  This is incorrect.  The SAC alleges sufficient facts to support the inference that Defendants were employers and exercised control over Plaintiffs.  Plaintiffs allege that Defendants hired Carusillo and Gate as Site Experts to work under the supervision of "Editorial Directors" pursuant to an "Expert Services Agreement." (Dkt. No. 30 ¶¶ 29–30, 44.).  Defendants directed the work that Plaintiffs were required to perform, including covering certain sports events and creating written content to publish on FanSided websites.  (Dkt. No. 30 ¶¶ 32–34.)  Defendants retained the right to edit the work product produced by Site Experts and all work product produced by Site Experts was owned solely by Defendants.  (Dkt. No. 30 ¶¶ 35, 40.)  And Plaintiffs allege that they were integral to Defendants' business, as the content created by the writers made up the entire product offered by Defendants, and without this content, "advertisers would not pay Defendants to advertise on these team sites."  (Dkt. No. 30 ¶ 45.)

Contrary to Defendants' understanding, these allegations, assumed true at this stage, establish an employment relationship under the FLSA and Massachusetts law sufficient to survive a motion to dismiss.  *See, e.g.*, *Olvera v. Bareburger Grp. LLC*, 73 F. Supp. 3d 201, 207 (S.D.N.Y. 2014) (denying a motion to dismiss an FLSA claim because the complaint asserted that franchisor defendants guided franchisees on how to hire and train employees, exercised control over the work of employees, and set requirements for the operation of franchises); *Hart*

---

[4] This Court takes judicial notice of the articles submitted by Defendants, namely Exhibits B, C, and D.  (Dkt. No. 38.)  *See Saint Laurie Ltd. v. Yves Saint Laurent Am., Inc.*, No. 13 Civ. 6857, 2015 WL 12991205, at *7 n.13 (S.D.N.Y. Mar. 27, 2015).  The Court will also take notice of the public profiles submitted by Defendants, Exhibits A and E, because neither Gate nor Carusillo disputes the actual factual material reflected on these websites.  *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, Inc.*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015).

*v. Rick's Cabaret Int'l Inc.*, No. 09 Civ. 3043, 2010 WL 5297221, at *3 (S.D.N.Y. Dec. 20, 2010) (denying motion to dismiss where plaintiffs alleged that defendant hired, managed, disciplined, and supervised them); *Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 629 (S.D.N.Y. 2007) (denying motion to dismiss where plaintiff alleged that he was an employee and referred to defendant as his employer in the section of the complaint related to his state law claims). Plaintiffs have therefore met their burden of pleading facts to support an inference that Defendants were their employers under the "economic reality" test.

### 3.   Failure to Allege a Minimum Wage Violation

Defendants additionally argue that Plaintiffs fail to allege with enough specificity how they calculated their average number of hours worked and the number of hours spent on each task. (Dkt. No. 36 at 23.) Furthermore, Defendants contend that Plaintiffs fail to provide any detailed accounting for their hours. (Dkt. No. 36 at 23.)

"To state a minimum wage claim, it is sufficient for a plaintiff to allege facts about her salary and working hours, such that a simple arithmetical calculation can be used to determine the amount owed per pay period." *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 532 (E.D.N.Y. 2017) (internal quotation marks omitted). Plaintiffs have done just that. Carusillo alleges that he worked as a Site Expert from January 2018 to June 7, 2018, averaging about thirty to thirty-five hours per week and was paid between $2.14-$4.40 per hour. Gate alleges that he worked as a Site Expert from August 2017 to January 2020, averaging about thirty hours per week and was paid between $5.00-$6.66 per hour. Both Carusillo and Gate have alleged that they were paid far below the federal minimum wage and the Massachusetts minimum wage. *See* 29 U.S.C. § 206(a)(1); M.G.L. ch. 151 § 1. Nothing more is required at this stage of litigation. *See Zhong*, 498 F. Supp. 2d. at 630–31 (minimum wage claim survived motion to dismiss where

plaintiff alleged only that he received $10 per day and worked twenty hours per week for a total of twenty weeks).

### B.     Motion to Conditionally Certify Collective Action

#### 1.     Conditional Certification

Under section 216 of the FLSA, "one or more employees" may bring an action under the FLSA "for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  In determining whether an action should be certified as an FLSA collective action, courts within the Second Circuit apply a two-step analysis.  *See Myers v. Hertz Corp.*, 624 F.3d 537, 544–45 (2d Cir. 2010).  "First, the court determines whether the proposed class members are 'similarly situated.'  If the court decides in the affirmative, then the proposed class members must consent in writing to be bound by the result of the suit, or 'opt-in.'  The second step, which typically occurs after the completion of discovery, requires the court to make factual findings whether the class members are actually similarly situated."  *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 65 (E.D.N.Y. 2016) (internal citations and quotation marks omitted). At this stage, the Court is concerned only with the first step, in which Plaintiffs need make only a "modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law."  *Id.* (cleaned up).  This requirement is considerably less stringent than the requirements for a Rule 23 class, *see Dilonez v. Fox Linen Serv., Inc.*, 35 F. Supp. 3d 247, 252 (E.D.N.Y. 2014), and "courts have routinely found that the allegations in the pleadings and the 'personal observations of one plaintiff's affidavit' are 'sufficient to make the modest factual showing necessary to conditionally certify [a] class.'" *Valerio*, 314 F.R.D. at 66 (quoting *Hernandez v. NGM Mgmt. Grp. LLC*, No. 12 Civ. 7795, 2013 WL 5303766, at *3 (S.D.N.Y. Sept. 20, 2013)).

9

Plaintiffs seek to conditionally certify the following class: "[A]ll persons who are working or have performed work in the United States for FanSided as a Site Expert at any time within the past three years and who were classified as independent contractors." (Dkt. No. 21 at 2.)   In opposition to the motion, Defendants argue: (1) Plaintiffs cannot establish a common unlawful practice of misclassification because they are properly classified as independent contractors; (2) members of the purported collective differ in meaningful ways; and (3) individual inquiries preclude conditional certification.  (Dkt. No. 43 at 10–23.)

This Court has already denied Defendants' motion to dismiss, concluding that Plaintiffs' allegations amount to cognizable FLSA minimum wage claims and Massachusetts law claims, so Defendants' first argument is without merit.  As to Defendants' second and third arguments, Plaintiffs submitted declarations from three Site Experts — Brandon Carusillo, David Gate, and Vincent Page.  (Dkt. No. 21, Exs. A–C.)  All three individuals allege that they applied for the job of Site Expert and were hired by an Editorial Director.  (Dkt. No. 21, Ex. A ¶ 6, Ex. B ¶ 5, Ex. C ¶ 5.)  They then had to sign an Expert Agreement, which set out the terms of their employment. (Dkt. No. 21, Ex. A ¶ 8, Ex. B ¶ 7, Ex. C ¶ 7.)  As Site Experts, Carusillo, Gate, and Page regularly watched sports games, drafted or edited numerous sports articles per week, managed other writers, monitored search engine optimization data, and oversaw a social media account. (Dkt. No. 21, Ex. A ¶ 10–11, Ex. B ¶ 9–10, Ex. C ¶ 9–10.)  Though the amount each declarant was compensated varies somewhat, they all allege that they were paid in monthly amounts far below the federal minimum wage.  (Dkt. No. 21, Ex. A ¶¶ 13, 19, Ex. B ¶¶ 12, 17, Ex. C ¶¶ 11, 17.)  All three declarants also allege that their co-Site Expert for their respective sports pages were paid below minimum wage.  (Dkt. No. 21, Ex. A ¶ 19, Ex. B ¶ 17, Ex. C ¶ 17.)  The declarants allege that they worked between twenty and thirty-five hours per week for FanSided.

(Dkt. No. 21, Ex. A ¶ 19, Ex. B ¶ 17, Ex. C ¶ 17.)  Plaintiffs have demonstrated that "they were subjected to certain wage and hour practices at [FanSided] and to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed class."  *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 368 (S.D.N.Y. 2007); *see also She Jian Guo v. Tommy's Sushi Inc.*, No. 14 Civ. 3964, 2014 WL 5314822, at *3 (S.D.N.Y. Oct. 16, 2014) (granting conditional certification to all deliverymen employed at the restaurant based on allegations that they worked 60 to 80 hours per week but were paid only $480 or $500 twice per month); *Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.*, No. 12 Civ. 265, 2012 WL 1981507, at *1 (S.D.N.Y. June 1, 2012) (granting conditional certification based on an employee's declaration that she and other employees were paid less than the minimum wage and were not compensated for overtime); *Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 326–27 (S.D.N.Y 2010) (granting conditional certification based on two affidavits).  Plaintiffs have therefore made the "modest factual showing" required to justify conditional certification of a Site Expert-wide class from the past three years.  *Cohen*, 686 F. Supp. 2d at 326.

### 2.    Proposed Judicial Notice and Consent Form

"Upon authorizing the distribution of notice to potential opt-in plaintiffs, the district court maintains broad discretion over the form and content of the notice."  *Chhab v. Darden Rests., Inc.*, No. 11 Civ. 8345, 2013 WL 5308004, at *15 (S.D.N.Y. Sept. 20, 2013) (internal quotation marks omitted).  Plaintiffs seek approval of a judicial notice and consent form (the "Notice") (Dkt. No. 21, Ex. D), which they propose be distributed to all collective members by first class and electronic mail.  (Dkt. No. 21 at 20.)  Plaintiffs also request authorization to send a reminder notice to potential collective members who have not responded forty-five days before the ninety-day notice period ends.  (Dkt. No. 21 at 21.)

Defendants primarily take issue with Section VI included in the Notice.  This section states that the updated employment agreements Defendants sent in August 2020, which included an arbitration agreement, do not apply and that a potential opt-in plaintiff can still join this case. (Dkt No. 21, Ex. D.)  The Court holds that Section VI is unnecessary.  As Defendants correctly explain, in summer 2020, they rolled out three updated agreements containing arbitration provisions with class and collective action waivers: (1) an Expert Services Agreement to current Site Experts that included a carve-out provision for this lawsuit; (2) an Expert Services Agreement to prospective Site Experts that did not include a carve-out provision; and (3) a Paid Contributor Agreement to all "Paid Contributors" that included an arbitration provision without a carve-out provision.  (Dkt. No. 41 at 3.)  There was nothing improper about this.  Paid Contributors are not part of this lawsuit, nor are Site Experts who were hired by Defendants after June 22, 2020.  The Expert Services Agreement sent to current Site Experts explicitly included a carve-out provision, so by Defendants' own terms, the arbitration provision does *not* apply to potential opt-in plaintiffs.

Additionally, the Court directs Plaintiffs to modify Section IV, which explains who can participate in the lawsuit.  The Court has approved a proposed collective action class that covers "all persons who are working or have performed work in the United States for FanSided as a Site Expert at any time within the past three years and who were classified as independent contractors."  It does not approve a proposed collective action class, as Plaintiffs suggest, that includes "similar employees."  (Dkt. No. 21, Ex. D at 2.)  Plaintiffs should also make clear that the time period covered by the collective action is June 22, 2017 to June 22, 2020, as the notice should be "keyed to the three-year period prior to the filing of the complaint."  *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013).

### C.       Motion to Communicate with Proposed Collective Action Members

Defendants now seek the Court's approval to send out another updated Expert Services Agreement to putative collective members that would include an arbitration agreement *without* a carve-out for this litigation.  (Dkt. No. 40 at 1.)  However, the updated agreement would allow potential class members to opt out of arbitration.  (Dkt. No. 40 at 1.)

"Whether a communication is misleading or coercive—and therefore warrants judicial intervention—often depends not on one particular assertion, but rather the overall message or impression left by the communication." *OConner v. Agilant Sols., Inc.*, 444 F. Supp. 3d 593, 601 (S.D.N.Y. 2020).  "A court therefore must examine the context in which the communications were made and the effect of the communications in determining whether, and how much, communication should be restricted." *Id.*

Defendants argue that sending an updated Expert Services Agreement that includes an arbitration provision to potential opt-in plaintiffs should be permitted because the agreement contains several features making it unlikely that a potential collective member would fail to understand what he or she was signing.  (Dkt. No. 40 at 15.)  These features include: (1) prominent, clear, and unambiguous class and collective action waivers; (2) information about the right to opt out of the arbitration agreement and the steps one should take to opt out; and (3) written notice of the pending litigation and the consequences of not opting out.  (Dkt. No. 40 at 14.)  Plaintiffs counter that rolling out an updated Expert Services Agreement with an arbitration provision and no carve-out provision for this action before the opt-in period ends would only confuse potential collective members and encourage them to not join the suit.  (Dkt. No. 59 at 9.)

The Court agrees with Defendants.  As Defendants note, they have taken many steps to ensure that the updated Expert Services Agreement is not confusing or misleading.  First, the arbitration provisions are clearly written, and several sections are bolded and in all capital letters,

13

signifying their importance.  (*See* Dkt No. 63, Ex. A ¶ 11.)  Second, the provisions are written in such a way that an employee can easily understand that agreeing to the arbitration provision will require the employee to resolve disputes with Defendants through arbitration.  (*See* Dkt No. 63, Ex. A ¶ 11.)  The agreement also makes clear that an employee can opt out of arbitration by handwritten or email notice within thirty days of signing the agreement and that an employee will not face retaliation if he or she opts out of the arbitration provision.  (Dkt No. 63, Ex. A ¶¶ 11.6, 11.7.)  Indeed, as early as the second paragraph Defendants mention that potential employees may opt out of the arbitration agreement.  (Dkt No. 63, Ex. A at 1.)  Third, there is no evidence that Defendants decided to update their agreements to foreclose potential plaintiffs from participating in this litigation.  Defendants have represented that they began updating their Expert Services Agreement to include an arbitration provision and a class and collective action waiver *prior* to the filing of the original complaint.  (Dkt. No. 40 at 2.)  Finally, Defendants intend to send out a notice about the pending lawsuit and the consequences of failing to opt out of the arbitration agreement.  (Dkt No. 63, Ex. C.)  There is therefore nothing misleading, coercive, or confusing about the updated Expert Services Agreement.

The cases on which Plaintiffs rely are inapposite.  In *Williams v. Securitas Security Services USA, Inc.*, the defendant distributed an arbitration "agreement" during the pendency of the action to all of its employees, including potential collective action plaintiffs.  No. 10 Civ. 7181, 2011 WL 2713741 at *1 (E.D. Pa. July 13, 2011).  The court found that the agreement was "likely to cause confusion to potential class members" primarily because it did not require an employee to sign the document before becoming effective.  *Id.* at *2.  Rather, an employee was "deemed to have consented to it unless he or she affirmatively opts out within 30 days."  *Id.* Further, while the agreement identified the pending litigation by name, it did not explain the

nature of the action.  *Id.* at *3.  Similarly, in *In re Currency Conversion Fee Antitrust Litigation*,

the court concluded that the defendants' communications engrafting arbitration clauses on

potential opt-in plaintiffs' agreements after commencement of the litigation were improper

because the notices did not inform the plaintiffs about the pending lawsuit or about the

consequences of signing the arbitration clause.  361 F. Supp. 2d 237, 250–51 (S.D.N.Y. 2005);

*see also OConner*, 444 F. Supp. 3d at 603 (invalidating application of arbitration agreement to

putative plaintiffs in the litigation because agreement did not disclose that by signing the

agreement, plaintiffs would lose their right to participate in this lawsuit and because plaintiffs

were required to return the agreements within two business days).  The factors in those cases that

led courts to invalidate arbitration agreements forged during the pendency of the litigation —

failing to inform plaintiffs about the lawsuit or the consequences of agreeing to arbitrate

disputes, drafting the arbitration provision in such a way that employees automatically consent to

arbitration unless they affirmatively opt out, and requiring plaintiffs to return the agreements

without sufficient time to review it — are not present here.

Accordingly, the Court grants Defendants' motion to communicate with putative

collective action members.  Plaintiffs may file any objections to the proposed email informing

potential opt-in plaintiffs about the updated agreement (*see* Dkt. No. 63, Ex. C), within two

weeks after the date this opinion and order is filed.  Further, by the same date, Plaintiffs may

propose new language to its Proposed Notice that explains how the opt-out provision of

Defendants' updated Expert Services Agreement works and the consequences of failing to opt

out of the arbitration provision with respect to this litigation.  Defendants may file any objections

to the updated notice within one week after Plaintiffs' submission.

15

### D.        Motion for Equitable Tolling

Finally, Plaintiffs move for equitable tolling of the statute of limitations regarding all potential opt-in plaintiffs for this action dating back to the filing of the initial complaint.  (Dkt. No. 32.)  "A district court may toll the limitations period to avoid inequitable circumstances, giving due consideration to whether the plaintiffs have acted with reasonable diligence in pursuing their claims and whether the circumstances are extraordinary enough to warrant equitable relief."  *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014).  One such circumstance is a delay in deciding a motion.  *See, e.g.*, *Yahraes v. Rest. Assocs. Events Corp.*, No. 10 Civ. 935, 2011 WL 844963, at *1 (E.D.N.Y. Mar. 8, 2011).  "While plaintiffs wishing to pursue their rights cannot sit on them indefinitely, those whose putative class representatives and their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delay in rulings."  *McGlone v. Contract Callers, Inc.,* 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012).

Here, Plaintiffs moved for conditional certification within three months of filing the initial complaint and the motion has been fully briefed for about nine months.  "Absent tolling of the limitations period, a substantial number of class members may now be time-barred through no fault of counsel or the class representative."  *Jackson*, 298 F.R.D. at 170.  Accordingly, the statute of limitations will be tolled as of the date of the filing of Plaintiffs' motion for collective action certification (September 4, 2020).

### III.    Conclusion

For the foregoing reasons, it is hereby ORDERED that:

- Defendants' motion to dismiss Plaintiffs' First Amended Complaint is DENIED as moot;
- Defendants' motion to dismiss Plaintiffs' Second Amended Complaint is DENIED;

- Defendants' motion to communicate with putative collective action members is GRANTED.  Plaintiffs shall file any objections to the proposed notice regarding this litigation within two weeks;
- Plaintiffs' motion for collective action certification is GRANTED.   Plaintiffs shall modify the proposed notice in accordance with the Court's direction and re-submit the proposed notice within two weeks for the Court's review.  Defendants may submit any objections to the updated notice within one week after Plaintiffs' submission; and
- Plaintiffs' motion for equitable tolling is GRANTED.

The Clerk of Court is directed to close the motions at Docket Numbers 21, 24, 35, and 40.

SO ORDERED.

Dated:  September 21, 2021
        New York, New York

_____
J. PAUL OETKEN
United States District Judge

17